[Crim. No. 1953. Third Dist. Apr. 15, 1946]

## THE PEOPLE, Respondent, v. JAMES CRENSHAW, Appellant.

E. Vayne Miller and Raymond E. McClure for Appellant.

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Respondent.

ADAMS, P. J.—Defendant was charged with a violation of section 4502 of the Penal Code, in that on the 12th day of March, 1945, he wilfully and unlawfully and feloniously, while a prisoner confined in Folsom prison, did possess and carry upon his person and have under his custody and control, a sharp instrument. He was convicted by a jury, a motion for a new trial was denied, and he has appealed from both the judgment and the order denying a new trial.

Section 4502 of the Penal Code, which was enacted in 1943, so far as material here provides:

"Every prisoner committed to a State prison who, while at such State prison . . . possesses or carries upon his person or has under his custody or control any instrument or weapon of the kind commonly known as a black-jack, slung-shot, billy, sandclub, sandbag, or metal knuckles or any explosive substance or any dirk or dagger or sharp instrument, or any pistol, revolver or other firearm, is guilty of a felony and shall be punishable by imprisonment in a State prison for a term not less than five (5) years."

The evidence shows that defendant was assigned to mechanical work in the prison, repairing lawn mowers. He had a bench behind the Educational Building, where he had for use a vise, chisels, and files. He testified that he had heard through the prison "grapevine" that he was "on the spot," and that in order to protect himself he had beveled off the edges of a "rat tail" file about six inches long until same had a very sharp point; that on leaving his place of employment about 4 p. m. he placed this instrument in a sheath which he had fashioned out of the tongue of his shoe, and concealed it on his back between his shoulders. He left his cell about 6:45 for supper in the mess hall, still carrying the weapon. In the line of prisoners was another inmate, Marco Easter, who advised a guard who was in attendance: "That man [indicating defendant] has got a knife in his pocket, take it away from him." Thereupon defendant was searched and the instrument found concealed between his shoulders.

On this appeal it is contended that the judgment should be reversed on two grounds, first, that section 4502 of the Penal Code is invalid, and, second, that the trial court erred in refusing to admit proffered testimony regarding an alleged assault upon defendant made by Marco Easter on March 11, 1945, at which time Easter had struck defendant in the face and threatened to kill him.

Appellant's argument regarding the validity of the statute is that it is too general in its prohibition of the possession of "any sharp instrument"; that it might be construed to prohibit the possession by a prisoner of a knife used by him in the prison cannery or in the prison kitchen, or the possession by prisoners of other sharp instruments necessarily used by them in the various other prison shops.

The answer to this contention seems to be plain—that defendant was not in possession of the sharp instrument under such circumstances. In *People* v. *Ferguson,* 129 Cal.App. 300 [18 P.2d 741] (hearing in Supreme Court denied), defendant was convicted of the possession of "metal knuckles" (Stats. 1923, p. 695, Stats. 1925, p. 542, and Stats. 1931, p. 2316; Deering's Gen. Laws, Act 1970). It was there contended by defendant that he kept the knuckles as curios or keepsakes, and did not use them or intend to do so; and that to hold that such mere possession constituted a crime might render guilty the keeper of a museum in which such knuckles were on display. The court said, pages 304-305:

"Whether or not the law would apply to a museum keeper is outside of this case, for the reason that there is no evidence that puts appellant in the category of a museum keeper. It may well be added, however, that the legality of statutes is not measured by extreme or unlikely situations. (*United States* v. *Kirby,* 7 Wall. (U.S.) 482 [19 L.Ed. 278]; *In re Reineger,* 184 Cal. 97, at p. 104 [193 P. 81].) When the statute is read as a whole it seems clear that the legislature meant to enact no halfway measure, for it is therein provided that 'blackjacks, slung-shots, billies, sand-clubs, sandbags and metal knuckles are hereby declared to be nuisances and shall be subject to confiscation and summary destruction whenever found within this state.' It is evident to us that the effective prohibition of the criminal use of weapons of this sort depends upon the right to prohibit possession thereof, and that the law does not intend to and does not in fact make any exception of heirlooms, curios or keepsakes of individuals. As to museum keepers we have already said we make no expression of opinion."

In *People* v. *Wells,* 68 Cal.App.2d 476, 480-481 [156 P.2d 979], this court considered the validity of section 4502, *supra,* and held same to be constitutional and a reasonable police regulation enacted to protect inmates and officers of state prisons from the peril of assaults with dangerous weapons by armed prisoners; that the statute was adopted on the justifiable theory that there is greater danger of imprisoned felons becoming incorrigible and resorting to violence if they are permitted to carry deadly weapons upon their persons, and that the possession of such weapons by them is validly and wisely prohibited.

It is said in 2 Lewis' Sutherland Statutory Construction, second edition, section 528, page 981:

"A penal statute should receive a reasonable and common sense construction, and 'its force should not be frittered away by niceties and refinements at war with the practical administration of justice.' The principle of strict construction does not allow a court to make that an offense which is not such by legislative enactment; but this does not exclude the application of common sense to the terms made use of in an act in order to avoid an absurdity which the legislature ought not to be presumed to have intended."

(Also see *People* v. *Ventura Refining Co.*, 204 Cal. 286, 292 [268 P. 347, 283 P. 60]; *Sutter-Yuba Investment Co.* v. *Waste*, 21 Cal.2d 781, 789 [136 P.2d 11].)

As for appellant's contention that the trial court erred in excluding testimony offered to show that there had been a fight between him and Easter on March 11th at which time Easter made threats to kill appellant, and that appellant's possession of the sharpened file was for defense against an anticipated assault, the statute itself contains no exception and we cannot assume that same was intended by the Legislature. In *People* v. *Wells, supra,* since the trial court had admitted evidence tending to show that the prisoner, Wells, was in possession of a knife for the purpose of defending himself against an anticipated attack by another prisoner who had attacked him, the admissibility of such evidence was not in question; but we said that the code section absolutely prohibits all prisoners in any state prison, without qualification, from possessing or carrying on their persons, certain designated weapons; that the intention or purpose with which they are carried is not an element of the offense. Also see *People* v. *Gonzales*, 72 Cal.App. 626, 630 [237 P. 812], holding constitutional a statute which prohibited a person who had been convicted of a felony from owning or having possession of a pistol, revolver or other firearm capable of being concealed upon the person, and also holding that the intent with which such possession was had was not essential to the completion of the criminal act. It would seem to follow, since self-defense as a defense would only tend to show lack of criminal intent, that where intent is not an element of the crime self-defense would not be a valid defense in a prosecution for its commission.

In *State* v. *Gibson*, 322 Mo. 369 [15 S.W.2d `760], defendant was charged with carrying a concealed weapon, to wit, a revolving pistol, in violation of a statute which prohibited the carrying of concealed weapons. Defendant offered evidence that he was carrying the pistol because his life had been threatened by a person who had previously inflicted injury upon him. The court said that this would constitute no defense under the statute; and as offered in mitigation it was inadmissible since the weapon would have been as efficient for protection if carried openly and not concealed in violation of the statute.

In *Slack* v. *State*, 107 Tex.Crim.R. 263 [296 S.W. 309], appellant complained that the trial court had refused evidence attempting to justify defendant's illegal possession of a pistol on the ground that he was in fear of an attack. But the appellate court said that though the law had formerly recognized such a defense it had been amended so as to omit it; and the judgment of conviction was affirmed.

Furthermore, it may be said that a prisoner is not deprived of the right of self-defense even though he may be prohibited from possessing the articles enumerated in the statute, since he may, if assaulted, defend himself by other means. Also this defendant might have sought protection from an anticipated assault by informing the prison authorities, as he had ample time to do so after the altercation with Easter the previous day. The situation was not one where he was confronted with an emergency that might have justified his seizing one of the prohibited weapons in order to protect himself.

We find no error in the record in the case, and the judgment and order are therefore affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied April 26, 1946, and appellant's petition for a hearing by the Supreme Court was denied May 13, 1946.