1999 OK 56

**Louise Barnes COLLINS, Harold G. Lowrey and Mark Mayo, Trustees of the Harriet Barnes Revocable Living Trust, Willis U. Barnes Testamentary Trust "A" and Willis U. Barnes Testamentary Trust "B", Plaintiffs/Appellees,**

v.

**MID–CONTINENT PIPELINE COMPANY, Defendant/Appellant.**

No. 84,691.

Supreme Court of Oklahoma.

June 15, 1999.

Rehearing Denied Dec. 15, 1999.

Mary J. Rounds, Huffman, Thomas & Rounds, Tulsa, Oklahoma and Jessie V. Pilgrim, Tulsa, Oklahoma for appellant.

Mart Tisdal, Clinton, Oklahoma and George H. Lowrey, Lowrey & Lowrey, Tulsa, Oklahoma for appellees.[1]

OPALA, J.

█ ¶ 1 This cause is before the court on its *sua sponte* inquiry into the viability of two opinions by the Court of Civil Appeals, Oklahoma City Division [COCA or OKC Division], the first of which was promulgated on 6 May 1997 and the second on 6 October 1998.[2]

## I

### THE ANATOMY OF LITIGATION

¶ 2 Mid–Continent Pipeline Company [*Mid–Continent*] appealed from judgment on jury verdict for the plaintiffs [*Trustees* or *movants*]. The cause was assigned for disposition to the COCA's Oklahoma City Division. The opinion, authored by Judge Buettner and promulgated 6 May 1997, reversed the judgment and remanded the cause for a new trial. Both Mid–Continent and the Trustees sought certiorari to review the COCA opinion.

¶ 3 The Trustees' post-opinion challenge to Judge Buettner's fitness to sit, filed in the COCA 13 August 1997, begins the saga that generated the problem now before this court. The court's original response to that challenge was by its order (*16 December 1997*) that retransferred the cause to the OKC Division "for consideration of appellees' motion to disqualify ... and of proceedings pertinent to that motion." Consideration of the certiorari petitions, then pending, was "*deferred until the disqualification issue has been finally determined.*" (emphasis supplied).

---

1. Identified herein are only those counsel for the parties *whose names appear on the briefs responding to this court's show-cause order of 19 April 1999.*

2. Perceiving the two opinions to be clouded by the course of proceedings below, we called for briefs on their viability status. This court is always free to inquire *sua sponte* into its jurisdic-

tion over any pending matter. *Stites v. DUIT Const. Co., Inc.,* 1995 OK 69, 903 P.2d 293, 297 n. 10; *State ex rel. Oklahoma Bar Ass'n v. Smolen,* 1992 OK 116, 837 P.2d 894, 903 (Opala, C.J., concurring); *Cate v. Archon Oil Co., Inc.,* 1985 OK 15, 695 P.2d 1352, 1356; *Pointer v. Hill,* 1975 OK 73, 536 P.2d 358, 361.

¶ 4 By its 17 February 1998 order the COCA *denied* the motion to disqualify. On *16 March 1998* this court directed that COCA "reconsider the appellees' motion to disqualify ... [because the OKC Division] misunderstood the terms and intent of [the Supreme Court's] December 16, 1997 order, *which called for a hearing on the motion to disqualify."* COCA was directed to "afford to all parties an evidentiary hearing, before the panel, with the opportunity to present witnesses and other proof." Once again·this court *"deferred* [its action on the then-pending certiorari petitions] *until the disqualification issue has been finally determined."* (emphasis supplied).

¶ 5 Judge Buettner voluntarily certified his disqualification to participate in the proceedings to disqualify him. The OKC Division then proceeded with the case by (a) *disqualifying* Judge Buettner—by its order of *24 July 1998*—from participating in the movants' petition for rehearing, (b) *appointing* Judge Carl B. Jones—by order of the same date—to replace Judge Buettner as a panel member, and (c) *withdrawing* its earlier (*7 October 1997*) order denying rehearing. COCA *granted* rehearing and concurrently *withdrew* its May 6 opinion (by order of 6 October 1998). On *6 October 1998* the OKC Division, acting through a panel then composed of Judges Joplin, Hansen and Jones, promulgated another opinion, affirming the nisi prius judgment on jury verdict. Mid-Continent sought review of the October 6 COCA pronouncement by its second amended petition, filed 23 October 1998.

¶ 6 On *sua sponte* inquiry, we review today the viability status of the two COCA opinions in this cause for an assessment of our responsibility over the pending certiorari petitions. They stand clouded because (a) *the first* was authored by a judge who has since been disqualified to sit in the case and (b) *the second* was promulgated when, under this court's December 16 and March 16 orders, (1) the case was still pending here on the earlier certiorari petitions and (2) *transferred* to the OKC Division was power limited *solely* to dealing with discovery and to conducting an evidentiary hearing into Judge Buettner's fitness.

## II

### EFFICACY OF THE FIRST (6 MAY 1977) COCA OPINION

 ¶ 7 The Trustees lodged a post-opinion challenge to Judge Buettner's neutrality as a member of the panel that promulgated the first opinion. Generally the issue of a judge's disqualification should be raised when the facts constituting the grounds for recusal are first discovered and, in any event, before the controversy is submitted for decision.[3] The rule rests on the principle that a party may not gamble on a favorable decision.[4] An exception to this rule applies when the grounds for disqualification are not discovered until after the controversy's disposition.[5]

¶ 8 The Trustees, *who challenged Judge Buettner's fitness after the fact,* brought themselves within the rule's exception. According to their argument, the grounds for his recusal were not discovered *until after* the first opinion's promulgation.

 ¶ 9 The *May 6* opinion is now to be regarded as the product of a constitutionally substandard process. It was promulgated by a panel whose member (and author) was subjected to COCA's recusal on a challenge to his neutrality.[6] The legal effect of Judge

---

3. *See, e.g., Baker v. Civil Service Com.,* 52 Cal. App.3d 590, 594, 125 Cal.Rptr. 162 (1975); *Church of Scientology of California v. Wollersheim,* 42 Cal.App.4th 628, 655–56, 49 Cal. Rptr.2d 620, 636–37 (1996).

4. *See, e.g., In re Disqualification of Pepple,* 47 Ohio St.3d 606, 546 N.E.2d 1298, 1299 (1989)(a party is deemed to have waived the right to press for a judge's disqualification when the alleged basis for recusal "has been known to the party for some time, but the objection is raised in an untimely fashion, well after the judge has partici-

pated in the proceedings"). *See, generally, Annot., Waiver or Loss of Right to Disqualify Judge by Participation in Proceedings—Modern State Civil Cases,* 24 A.L.R.4th 870 (1983).

5. *See, e.g., Baker, supra* note 3, 52 Cal.App.3d at 594, 125 Cal.Rptr. 162; *Wollersheim, supra* note 3, 42 Cal.App.4th at 655–56, 49 Cal.Rptr.2d 620.

6. *Liljeberg v. Health Services Acquisition Corporation,* 486 U.S. 847, 864–70, 108 S.Ct. 2194, 2205–07, 100 L.Ed.2d 855 (1988); *Aetna Life Ins. Co. v.*

Buettner's July 24 disqualification saps the first opinion of its viability status. Judge Buettner's post-promulgation disqualification by COCA took effect *retrospectively* because he was challenged for acts that had preceded the assignment of the case to the panel of which he was a member.[7]

## III

## EFFICACY OF THE SECOND (6 OCTOBER 1998) OPINION

### A.

### *The Second Opinion Is Coram Non Judice* [8]

¶ 10 Mid–Continent's second amended petition for certiorari now before this court for review of the second COCA opinion fails to present a viable COCA pronouncement. This is so because the COCA panel when promulgating the second opinion was under this court's 16 December 1997 and 16 March 1998 orders, which invested it with authority *limited solely* to discovery proceedings and to an evidentiary hearing upon the quest for Judge Buettner's disqualification. Moreover, when the second opinion was promulgated the COCA lacked power to withdraw its first opinion which at that point lay

*within the exclusive jurisdiction of this court upon the then-pending certiorari petitions.* The second opinion must hence be vacated as *coram non judice.*

### B.

### *The Second Opinion Also Is To Be Treated As In Breach Of Constitutionally Mandated Interinstitutional Deference*

¶ 11 There exists another basis for declaring nonviable the status of the second COCA opinion. Its promulgation while certiorari proceedings were still pending upon the initial petitions must be regarded as a clear breach of constitutionally mandated interinstitutional deference.[9]

¶ 12 If an opinion is pending before this court on certiorari, it may not be withdrawn by the COCA division whence it came and be replaced by another pronouncement. By the constitutionally prescribed order the latter tribunal occupies a position hierarchically *inferior* to that of the Supreme Court. Uninvited or unauthorized relitigation in the COCA of issues pending before this court on certiorari is barred by the mandate of Art. 7, §§ 4, 5 and 6, Okl. Const.[10] COCA was utter-

---

*Lavoie,* 475 U.S. 813, 827–28, 106 S.Ct. 1580, 1588–89, 89 L.Ed.2d 823 (1986). The COCA's 24 July 1998 disqualification order gives no basis for the court's recusal of Judge Buettner other than for "good cause shown, based on the pleadings and briefs of the parties." The order states that the recusal "in no way reflects an opinion that Judge Buettner was acting in the matter while biased or in the face of statutory grounds for recusal." COCA's statement that its recusal is rested upon the pressed challenge *is sufficient to connect it with the movants' allegations about his lack of neutrality.*

7. *Liljeberg, supra* note 6, 486 U.S. at 864–70, 108 S.Ct. at 2205–07; *Lavoie, supra* note 6, 475 U.S. at 827–28, 106 S.Ct. at 1588–89.

8. A case is said to be *coram non judice* when the court in which it is brought has *no jurisdiction* to settle the dispute. A decision *coram non judice* is legally invalid. *PFL Life Ins. Co. v. Franklin,* 1998 OK 32, 958 P.2d 156, 163; *Goldman v. Goldman,* 1994 OK 111, 883 P.2d 164, 166; *Board of Law Library Trustees v. State,* 1991 OK 122, 825 P.2d 1285, 1291. For the definition of *coram non judice,* see BLACK'S LAW DICTIONARY at 305 (5th ed.1979).

9. *LCR, Inc. v. Linwood Properties,* 1996 OK 73, 918 P.2d 1388, 1391–92.

10. *See* Art. 7 § 4, Okl. Const., whose pertinent terms are:

... The original jurisdiction of the Supreme Court shall extend to a general superintending control *over all inferior courts* .... [emphasis supplied].

*See* Art. 7 § 6, Okl. Const., whose pertinent terms are:

... [G]eneral administrative authority over all courts in this State ... is hereby vested in the Supreme Court....

*See* Art. 7 § 5, Okl. Const., whose pertinent terms are:

... The jurisdiction, powers, duties and procedures of intermediate appellate courts shall be as provided by rules of the Supreme Court until otherwise provided by statute....

*See also Ingram v. Oneok, Inc.,* 1989 OK 82, 775 P.2d 810, 812; *Wimberly v. Buford,* 1983 OK 25, 660 P.2d 1050; *Matney v. King,* 20 Okl. 22, 93 P. 737, 744 (1908).

ly *sans* power to grant rehearing in this case and to withdraw its May 6 opinion.

## IV

## CERTIORARI MUST BE DISMISSED BECAUSE THE PETITIONS PRESENT NO VIABLE OPINIONS FOR REVIEW

■ ¶ 13 The pending certiorari petitions must be dismissed because neither that which is directed to the first opinion nor that addressing the second opinion presents viable issues for review. *The efficacy of certiorari process depends on submission of judicial acts that are a fit subject for review.*

## V

## MID–CONTINENT'S CHALLENGES TO (A) THE COCA PANEL'S RECUSAL OF JUDGE BUETTNER AND TO (B) THE PANEL'S ASSIGNMENT OF JUDGE JONES TO REPLACE THE DISQUALIFIED PANEL MEMBER COME TOO LATE

■ ¶ 14 Mid–Continent argues that the 24 July 1998 disqualification of Judge Buettner is *coram non judice* because the order was entered (a) without any legal basis and (b) without an antecedent evidentiary hearing alleged to have been directed by this court's March 16 order. Moreover, Mid–Continent contends, the COCA had no authority to convene a new panel without first entertaining disqualification proceedings. In short, Mid–Continent attacks those COCA orders of 24 July 1998 which disqualify Judge Buettner and appoint Judge Jones to sit in his place as a panel member.

■ ¶ 15 We hold that Mid–Continent's objection to Judge Buettner's ordered recusal comes too late. By failing to complain until after the COCA's unfavorable disposition, Mid–Continent is deemed to have waived any error there may have been in the manner in which (a) Judge Buettner was disqualified or (b) Judge Jones was appointed to the COCA panel. The challenge is pressed here by *afterthought* rather than by timely objection.[11] It was Mid–Continent's duty to object, at the earliest opportunity, to the legitimacy of Judge Buettner's July 24 recusal and to the legality of Judge Jones' July 24 assignment to the panel. The time interval between the 24 July 1998 disqualification and the date the second opinion was handed down (6 October 1998) was the period during which the complaint should have been made. Mid–Continent may not gamble on the outcome of a second opinion and now complain after it has met with an adverse disposition.[12]

## VI

## EFFECT OF TODAY'S VACATION

¶ 16 We hold that this appeal is to be treated as undecided and direct that it be assigned to COCA's Tulsa Division, there to be considered and disposed of *de novo*.

## VII

## SUMMARY

¶ 17 On *sua sponte* inquiry we conclude—upon consideration of the briefs and other paperwork on file—that both opinions promulgated herein by the Court of Civil Appeals, Oklahoma City Division, lack viability status. The *first* of these lost its legal efficacy by the COCA decision that granted the Trustees' post-opinion challenge to Judge Buettner's fitness to sit. The *second* opinion is without viability because it was promulgated *coram non judice*. Jurisdiction of the cause had been retained by the Supreme Court by whose order *solely* the power over the quest for Judge Buettner's disqualification resided in COCA for its inquiry and decision *on that issue alone*. The pronouncement of the second opinion was also in

---

11. Just as a judge's disqualification must be preceded by a *timely* request (*Chronic Pain Associates, Inc. v. Bubenik*, 1994 OK 127, ¶ 22, 885 P.2d 1358, 1363), so too a recusal order must be followed by a *timely* challenge to its legal correctness.

12. *See, e.g., In re Disqualification of Pepple, supra* note 4 at 1299 *See, generally, Annot., Waiver or Loss of Right to Disqualify Judge by Participation in Proceedings, supra* note 4.

breach of constitutionally mandated interinstitutional deference.[13]

¶ 18 Because *none* of the petitions for certiorari on file herein presents for this court's review a COCA opinion that may lay claim to viability status, pending certiorari petitions must be dismissed. This cause, once again, stands as if the appeal has never been decided. It is assigned for disposition to COCA's Tulsa Division.

¶ 19 ALL JUSTICES CONCUR.

---

**13.** *LCR, Inc., supra* note 9 at 1391.